STEPHEN YAGMAN
475 Washington Boulevard
Venice Beach, California 90292-5287
(310) 452-3200

Presented on behalf of Plaintiff Stephen
Yagman, in his individual capacity only



"DDJ RELATED"

BY: _____
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2014 SEP 29 PM 1:49
"FILED"
"RECEIVED"

 **ORIGINAL**

LA CV14 07555-SVW (CW)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| STEPHEN YAGMAN, individually and in his class representative capacity,<br><br>Plaintiff,<br><br>v.<br><br>CORNELL COMPANIES, INC., MIKE REED, KEVIN LOUIS KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP, INC., CALIFORNIA THE | **COMPLAINT**<br><br><br><br>**JURY DEMAND** |

PAID
SEP 29 2014
Clerk, US District Court
Central Dist. of Ca.

1

GEO GROUP, INC., POLITICAL
ACTION COMMITTEE, INC.,
GEORGE C. ZOLLEY, JAMES
BLACK, JOHN J. BULFIN,
NORMAN A. CARLSON,
CLARENCE E. ANTHONY, JULIE
M. WOOD, RICHARD H.
GLANTON, ANNE NEWMAN
FOREMAN, CHRISTOPHER C.
WHEELER, JOHN M. HURELY.
STEPHEN FULLER, BRIAN R.
EVANS, ANN M. SCHLARB,
THOMAS M. WIERDSMA, DAVID
J. VENTURELLA, REDWOOD
TOXICOLOGY LABORATORY,
INC., WAYNE ROSS, MARK J.
DEMEO, RICHARD R. WILBER,
ELIEZEER BEN-SHMUEL, SARAH
MARIE SCHUH (aka SARAH
MARIE WIDIGER), GEORGE
CHINYERE ADIELE, BRENDA
BURCH, CARMEN NAVARRO,
NICOLE KNIGHT, ROBERT E.
McFADDEN, WES J. MAYHEW,
RANDY J. McWILLIAMS,
HERIBERTO H. TELLEZ, RANSOM
ALI, MICHAEL L. BENOV,  ERWIN
CARL MEINBERG, DAVID SHINN,
HARLEY G. LAPPIN III,
ALEXANDER W. SINAVSKY,
KATHLEEN M. KEENEY,
CHARLES E. SAMUELS, ERIC
HIMPTON HOLDER, JR., DEREK
ANTHONY WEST, and TWENTY
UNKNOWN NAMED
DEFENDANTS,

Defendants.

Plaintiff makes the following allegations on information and belief and alleges that the conduct alleged against defendants violated plaintiff's constitutional rights, federal law, constituted RICO violations, and was conspiratorial.

## JURISDICTION AND VENUE

1.  Plaintiff, on the one hand, and all defendants, on the other hand, are citizens of different states, respectively, plaintiff Stephen Yagman ("Yagman" or "plaintiff"), is a New York (citizen) and a California resident of Los Angeles County, and defendants, each and all, are citizens of states other than New York, and therefore this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This court also has jurisdiction pursuant to 28 U.S.C. § 1331 of the federal claims.  Defendants systematically do business in California, all of the claims arose in California and in the United States District Court for the Central District of California, and defendants engaged in case-specific conduct in California, as set forth hereinbelow, on which all of the claims made against them are based.

2.  This court has subject matter jurisdiction pursuant to the United States Constitution, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), federal law, and 28 U.S.C. § 1331.

3. Plaintiff is a resident only of the State of California, and of the Central District of California, and because defendants do business in California and all of the matters that are the basis for this action occurred in Los Angeles County,

3

1   therefore, venue lies in the United States District Court for the Central District of

2   California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

3        4. Each defendant acted under color of federal law.

4        5. Each and all of the wrongful conduct alleged hereinbelow occurred

5   pursuant to established policies, practices, procedures, and customs of the named

6   defendants as individuals and of the federal Bureau of Prisons ("BOP")

7        6.  All defendants are sued only in their individual and not in their official

8   capacities.

9                              **THE PARTIES**

10       7.  Plaintiff, STEPHEN YAGMAN, was incarcerated at MDC-LA from July

11   2, 2010 to November 8, 2010, except July 15 to July 19, 2010.

12       8. Defendants are: CORNELL COMPANIES, INC., who from July 2, 2010

13   to August 10, 2010, owned and operated the Marvin Gardens Residential Reentry

14   Center ("RRC" or "half-way house"); MIKE REED, KEVIN LOUIS KINCEY,

15   JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE

16   TURNER, and KIM FOWLER, all of whom ran and/or were employed at that

17   half-way house by Cornell; JAMES E. HYMAN, JOHN R. NIESER, CATHRYN

18   L. PORTER, PATRICK N. PERRIN, and BENJAMIN E. ERWIN, all of whom

19   owned and/or operated Cornell and that half-way house; GEO GROUP, INC.,

20   CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION COMMITTEE,

21   INC., merged with and apparently took over Cornell on August 10, 2010, and who

22   assumed any liabilities of Cornell on that date; GEORGE C. ZOLLEY, JAMES

23   BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E.

24   ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN

25   FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN

26   FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA,

27   and DAVID J. VENTURELLA, all of whom owned/own and/or operate GEO,

28

4

who is a large owner of private prisons and of half-way houses; REDWOOD TOXICOLOGY LABORATORY, INC., WAYNE ROSS, MARK J. DEMEO, and RICHARD R. WILBER, all of whom in 2010 owned, operated, and/or ran Redwood, who conducted a toxicological analysis of a urine sample allegedly identified to Plaintiff, allegedly between June 22, 2010 and June 29, 2010 and who issued a report by a means utilizing and affecting interstate commerce – the Internet – based on the alleged analysis in which they falsely published that the sample tested positive for a barbiturate, and based on which the Cornell Defendants initiated a BOP disciplinary adjudication against Plaintiff and Plaintiff's placement in the MDC-LA and his retention there from July 2, 2010 to November 8, 2010; ELIEZEER BEN-SHMUEL and SARAH MARIE SCHUH (aka SARAH MARIE WIDIGAR), who are lawyers who worked and work for the BOP; GEORGE CHINYERE ADIELE, Plaintiff's case manager at MDC-LA; BRENDA BURCH, Plaintiff's counselor at MDC-LA; CARMEN NAVARRO, the unit manager of Plaintiff's unit at MDC-LA; NICOLE KNIGHT, medical personnel at MDC-LA; ROBERT E. McFADDEN, in 2010 the Western Regional Director for BOP; WES J. MAYHEW, the BOP Western Region director of RRCs; RANDY J. McWILLIAMS, a BOP disciplinary hearing officer ("DHO"); HERIBERTO TELLEZ, a BOP captain person who ran MDC-LA; RANSOM ALI, a DHO at MDC-LA; MICHAEL L. BENOV, the MDC-LA warden from February 10, 2006 to March 25, 2010, who was the BOP policymaker, who formulated, and who was responsible for BOP policies and their administration at MDC-LA; ERWIN CARL MEINBERG, the MDC-LA warden or acting warden from July 2, 2010 to November 30, 2010, who was the BOP policymaker, who formulated, and who was responsible for BOP policies and their administration at MDC-LA from July 2, 2010 to December 31, 2010; DAVID SHINN, an assistant warden at MDC-LA, who also was responsible for formulation and administration of BOP policies

at MDC-LA; HARLEY G. LAPPIN III, the BOP Director from prior to July 2, 2010 to 2011, and who formulated and was responsible for the administration of all BOP policies during his tenure; ALEXANDER W. SINAVSKY, the medical director at MDC-LA from July 2, 2010 to November 8, 2010, who was responsible for its medical policies and implementation of medical policies; KATHLEEN M. KEENEY, the BOP general counsel from 2004 to present, who was responsible for formulation and implementation of the BOP administrative remedy processes; CHARLES E. SAMUELS, a director of the BOP who was responsible for formulation and implementation of the BOP administrative remedy processes; ERIC HIMPTON HOLDER, JR., and DEREK ANTHONY WEST, the United States Attorney General and the United States Associate Attorney General, from 2008 to present, and who ultimately were the chief BOP policymakers, who formulated, and who were responsible for BOP policies for the entire BOP and at MDC-LA from 2008 to present, and who were responsible for formulation and implementation of the BOP administrative remedy processes; and TWENTY UNKNOWN NAMED DEFENDANTS, who in some manner participated in the acts and omissions herein alleged and/or conspired with respect to the acts herein alleged.

### ALLEGATIONS COMMON TO EACH COUNT

9.  Each and every allegation of each and every averment of this complaint is incorporated herein by this reference in each and every other allegation of this complaint.

10.  All acts and/or omissions perpetrated by each defendant were engaged in fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent, in disregard of the rights of plaintiff.

11.  With respect to the BOP administrative remedy, or grievance, process,

a.  a first level request for an administrative remedy, or grievance, is required to be submitted to a prisoner's counselor, on a form "BP 229;"

b.  a form BP 229 is not openly available and must be obtained from a counselor;

c.  a second level request for an administrative remedy is required to be submitted to the facility warden on a form "BP 9;"

d.  a form "BP 9" is not openly available and must be obtained from a counselor;

e.  a third level request for an administrative remedy is required to be submitted to the BOP region on a form "BP 10;"

f.  a form "BP 10" is not openly available and must be obtained from a counselor;

g.  a fourth level request for an administrative remedy is required to be submitted to the BOP Office of General Counsel, in Washington, D.C., on a form "BP 11;"

h.  a form "BP 11" is not openly available and must be obtained from a counselor;

i.  a second level (warden) request will not be processed and will be rejected unless a response to a first level (counselor) request is attached to it;

j.  a third level (region) request will not be processed and will be rejected unless both the response to the first level (counselor) and second level (warden) requests are attached to it;

k.  a fourth level request (office of general counsel) will not be processed and will be rejected unless the first level (counselor) response, the second level (warden) response, and the third level (region) response are attached to it;

l.  an institution administrative remedy coordinator is required promptly to provide to a prisoner a printed receipt for a level two request;

m.  a region administrative remedy coordinator is required promptly to provide a prisoner with a printed receipt for a level three request;

n.  an office of general counsel administrative remedy coordinator is required promptly to provide a prisoner with a printed receipt for a level four request; and,

o.  there are regulatory-governed times by which each level administrative adjudication is required to be completed and provided to prisoner-grievants.

The due process violation consists, *inter alia,* of plaintiff not being able to avail himself of C.F.R. § 542.18s and being prevented by defendants from availing himself of § 542.18s ability to construe a failure timely to respond as a denial and to go to the next level of grievance, because whenever plaintiff got no timely response to a grievance and then, when he went to the next level, at that next level, his grievance was rejected because he had not attached to it the result at the prior level(s).  The BOP does not follow the requirements of § 542.[1]

21.  Yagman submitted an administrative grievance appeal, concerning the adjudication against him of a disciplinary infraction, to the BOP Western Region Director, Robert E.  McFadden on or about August 2, 2010.

22.  McFadden denied Yagman's appeal on or about August 21, 2010.

23.  McFadden, and possibly Meinberg, and possibly others, intentionally failed to provide McFadden's response to/denial of Yagman's appeal to Yagman, and thereby prevented Yagman from making an effective appeal to the next administrative level, 11, thereby preventing Yagman from exhausting the BOP administrative remedy process.

24.  According to the pertinent regulations, a grievant is permitted to proceed to the next level of the BOP administrative remedy process, here level 11,

---

8

the Office of General Counsel, when the grievant has not timely received a response to the prior level of appeal, here level 10, the Regional level.

25.  As a matter of fact and BOP practice, what is alleged in averment 24 is made impossible because when one avails herself or himself of the right to proceed to the next grievance level, when one has not received a disposition from the prior level, the next level will not accept, and rejects or returns unadjudicated, the appeal for want of having attached the responses to all prior levels of the grievance procedure, as is evidenced by what is alleged by plaintiff Schwarz, and that is incorporated herein by this reference.

26.  By not transmitting to Yagman McFadden's disposition of Yagman's level 10 appeal to the Region level, McFadden and others thereby intentionally deprived Yagman of his right to due process of law, the process being the BOP grievance procedure.

27.  There are pervasive and national practices and customs throughout the BOP of adjudicators at all levels of grievances below level 11:

(a) not providing timely receipts for grievances filed to prisoners who filed them;

(a) not responding at all to grievances,

(b) not timely responding to grievances,

(c) not providing dispositions of grievances to grievants,

(d) adjudicators of grievances at levels 9 (wardens), 10 (regions), and 11 (office of general counsel) rejecting appeals of lower level grievances when grievants do not attach the adjudications at lower levels, and

(e) basing those rejections on not making such attachments of lower level dispositions.

28.  The practices and customs described hereinabove are a cause in fact and a legal cause that operate to thwart and prevent prisoners who filed grievances

from successfully completing the grievance process, or delaying the process, and thereby complying with both the Prison Litigation Reform Act ("PLRA") and/or the judicially-imposed requirement that prisoners prudentially exhaust administrative remedies before filing federal actions, and these practices and customs significantly deprive BOP prisoners nationwide of their rights to due process of law, both procedurally and substantively.

28.-39. Reserved.

40.  On or about May 13, 2010, Plaintiff was transferred from the Federal Correctional Complex in Butner, North Carolina ("FCC Butner") to the Marvin Gardens Residential Re-entry Center ("RCC") in Los Angeles, California.

41. Under BOP policy, inmates undergo random drug testing.

42. On June 22, 2010, Marvin Gardens RCC staff member Rutherford collected a urine specimen from Plaintiff and submitted it to Redwood and Ross for drug testing.

43. The specimen was collected on June 22, 2010, was received by the laboratory on June 24, 2010, and "reported" on June 28, 2010.

44. The Laboratory Report, dated June 29, 2010, indicates that the specimen tested positive for barbiturates, confirmed as Phenobarbital.

45. The Incident Report was prepared by Del Campo, apparently at the Marvin Gardens RCC.

46. The Incident Report indicates that Del Campo obtained the Laboratory Report on June 29, 2010, and became aware that it indicated a positive test result for Phenobarbital.

47. In the incident report Del Campo further stated as follows: "A review of the medication log indicates inmate Yagman was not approved for any medication that would produce a positive for the substances[,]" this was false, and went on that "[b]ased on the above information, Yagman, Stephen Reg. # 43263–112 is being cited for violation of code # 112, 'Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff.'"

48. The Incident Report indicated that the "incident" occurred on June 29, 2010, at 9:35 a.m., although it is also indicated that staff became aware of the incident at 9:55 a.m.

49. Del Campo's signature is dated June 29, 2010, at 2:26 p.m.

50. A further entry on the Incident Report indicates that it was delivered to Plaintiff by Turner [but reads "Truman"] on July 2, 2010, at 11:24 a.m., which is false.

51. A space for "resident's signature" indicating receipt of the Incident Report is blank and there is no annotation on the Incident Report indicating that Plaintiff received it but refused to sign it.

52. Plaintiff alleges that the Incident Report was not delivered to him on that date.

53. Plaintiff was designated at the assigned Marvin Gardens RCC) from May 13, 2010, at "1819" (apparently 6:19 p.m.), until July 2, 2010, at "1519" (apparently 3:19 p.m.), when Plaintiff was transferred to the MDC, where he remained through and after the date of the disciplinary hearing referenced below.

54. A Notice of Center Discipline Committee Hearing ("CDC Notice"), dated July 7, 2010, identifies a disciplinary charge against Plaintiff ("use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff"), and indicates that a center disciplinary committee hearing ("CDC Hearing") on the matter was scheduled for July 7, 2010 (not July 8) at 4 p.m., at the Metropolitan Detention Center ("MDC"). The hearing was held at 11:00 a.m. on July 8, and not on July 8 at 4:00 p.m.

55. There never was any "committee," in that a "committee" must contain more than one person and there never was more than one person, Kincey, who adjudicated the disciplinary charge.

56. The CDC Notice given to Plaintiff by Fowler indicates that it was given to Plaintiff on July 7, 2010 and that Plaintiff signed it, but it was not provided to Plaintiff within the required time before the hearing was to be held and actually was held on July 8.

57. On the CDC Notice, Plaintiff requested two witnesses for the hearing (Katherine Turner and John Uyeda), Plaintiff stated that he was not served with the Incident Report until July 7, 2010, at 11:45 a.m., and specifically denied that he was served with the Incident Report on July 2, 2010, at 11:24 a.m., as indicated on the Incident Report.

58. There is no indication on the CDC Notice of the time at which the CDC Notice was served on Plaintiff.

59. Plaintiff alleges that the Notice was not served before 11:45 a.m. on July 7, 2010.

60. There also is a form entitled Inmate Rights at Center Discipline Committee Hearing, and two, different persons allegedly signed this form indicating that it was given to Plaintiff on July 7, 2010, and that he refused to sign the acknowledgment.

61. There is nothing on the form to indicate at what time it was given to Plaintiff.

62. Among the rights enumerated on this form are the right to have a written copy of the charges at least 24 hours prior to appearing before the CDC, and the right to call witnesses and present documentary evidence "provided Center safety would not be jeopardized."

63. A CDC Hearing was held at the MDC on July 8, 2010.

64. Evidence presented at the CDC Hearing included a Memorandum from Turner, the medication policy from the Marvin Gardens RCC, medical records of Plaintiff's indicating that, among many other medications, he had been prescribed Bellatal ER or Donnatal (that usually would contain a form of Phenobarbital), and a list of prescribed medications which Plaintiff had provided to the BOP and to Mr. Uyeda at Marvin Gardens. A memorandum from Reed, Director of Marvin Gardens, states that "Inmate Yagman was considered a flight risk due to his offense resulting in a return to close custody. As a result, the Incident Report was not served to him within 24 hrs of the incident. We respectfully request a waiver for that part of the CDC process." This memorandum is dated July 28, 2010, 20 days after the CDC hearing, and 26 days after the Incident Report allegedly was served on Plaintiff.

65. The CDC Report is not dated and does not clearly identify the solitary "chairman" who held the hearing and prepared the report, but who was Kincey.

66. The report identifies the date of the "incident" as June 22, 2010, and the date of the Incident Report as June 29, 2010, and states that a copy of the incident report was given to Plaintiff on July 2, 2010, at 11:24 a.m., by Turner, and that Plaintiff was advised of his rights before the CDC on July 7, 2010, but with no time specified.

67. The CDC Report indicates that the two witnesses requested by Plaintiff were not permitted to be called, for the following reasons: "John Uyeda is no longer a Cornell employee. Could not jeopardize center safety by calling Monitor Turner to testify, see written attach."

68. The CDC found that Plaintiff committed the act as charged, and recommended that he be returned to close custody and lose 75% of his good conduct time, giving the following as the reason: "Hopefully by returning Yagman to a more secure setting and pulling good time this will discourage this type of behavior in the future."

69. No explanation is given as to why it would have jeopardized center safety to call Turner, why she could not have appeared, for example, telephonically, or why the fact that Mr. Uyeda no longer was employed by the company running Marvin Gardens – at that time Cornell, which on August 10, 2010 merged with GEO – made it impossible to call him as a witness or to request that he later submit a written statement, as was done with Ms. Turner.

70. The CDC's "Specific Evidence Relied on to Support the Findings" is "It should be noted that the Incident Report was not served to you within 24 hrs of the offense as it resulted in a return to custody and you were deemed a flight risk. A waiver for that part of the process is attached. You were served with a copy of the Incident Report when the Marshals service returned you to close custody on

7/2/10 at 11:24 a.m. This did not prevent you from presenting a defense. It is also noted that on section 4 of the Incident Report the date was entered incorrectly as was the time on section 5. The date of the incident was 6/22/10 at 8:10 p.m. when you submitted the positive UA sample. This did not change the fact that specimen # 733081 that you submitted to the security staff member tested positive for Barbiturates and Phenobarbital. The CDC finds you guilty of violating Code 112; Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff. The CDC considered the written account of the reporting staff member. 'At 9:35 a.m. on 6/29/10, Job developer, Jennifer Del Campo was pulling the Specimen disposition sheets from the Redwood Toxicology Laboratory website. The lab results indicated a positive test result for (Barbiturates confirmed Phenobarbital) for specimen # 733081. A Review of the Chain of Custody record for specimen # 733081 indicated the inmate Yagman, Stephen Reg. # 43263–112 submitted the UA specimen on 6/22/10 at 8:10 p.m. to Monitor Staff John Rutherford. A review of the medication log indicates inmate Yagman was not approved for any medication that would produce a positive for the substances. Based on the above information, Yagman, Stephen Reg. # 43263–112 is being cited for violation of code # 112, Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff.' The CDC considered your statement, 'John Uyeda never advised me I could not take prescription medication or gave me written rules that said that, and I took a Donnatal on either 6/21/10 or 6/22/10 for intestinal pain.' The CDC also considered the documentation submitted by you, a prescription for Donnatal dated *4/10/06* [emphasis original] from Geller, Rudnik, Bush & Bamberger, M.D.'s. The CDC gave more weight to the reporting staff member's statement that you tested positive for barbiturates/Phenobarbital, the positive Redwood Toxicology Laboratory report on Specimen # 733081, the Marvin Gardens Medication policy

signed by John Uyeda and Stephen Yagman on 5/13/10 during intake screening and finally your own admission that you took a 'Donnatal' on or about 6/21/10 or 6/22/10. The CDC also gave more weight to the fact you never submitted any prescription medication to staff for review and approval prior to use. Therefore based on the information stated above, you are found guilty of violating Code 112; Use of any narcotics, drugs, or related paraphernalia not prescribed for the individual by medical staff.

71. Discipline Hearing Officer ("DHO") McWilliams stated that, on July 28, 2010, McWilliams reviewed the record and findings of the CDC hearing (as discussed above), and McWilliams concluded, knowingly falsely"that Mr. Yagman had been afforded his due process rights and that the CDC's factual conclusions were supported by sufficient evidence" and also knowingly falsely stated that Plaintiff "never submitted any prescription to staff for approval."

72. McWilliams then sanctioned Plaintiff with the loss of forty days good conduct time credits and by transfer to a "secure facility."

73.  Plaintiff already had been placed in a "secure facility," MDC-LA, on July 2, 2010.

75. An unclear handwritten annotation appears to indicate that the hearing was held at 4:00 p.m. As discussed below, Plaintiff disputes the time at which the disciplinary hearing was held.

76. Plaintiff immediately filed an administrative appeal to the BOP Western Regional office in Stockton, California.

77. Plaintiff's appeal was denied by Regional Director McFadden in a document dated August 20, 2010, which contains at least four significant

misstatements of the CDC record, namely: (1) it confuses the Incident Report with the CDC Notice, in determining when Plaintiff was notified of the charges and the disciplinary proceeding pending against him; (2) it misstates the date of CDC hearing, as July 7, 2010 rather than July 8, 2010, and concludes, affirmatively, that "[t]he CDC hearing was conducted on time, on July 7, 2010"; (3) it states that the record shows that Plaintiff did not present documentary evidence in his behalf, which is contradicted by the actual record, as alleged above, the findings of the CDC, and the declaration of McWilliams; and, (4) it states that "the record shows you were *not* prescribed medication or authorized to use medication (Donnatal) that was previously prescribed to you, at the time of the offense," (emphasis added), although the record, as alleged above, in fact shows that Plaintiff *had been* prescribed Donnatal, and it fails to establish the crucial point as to whether Plaintiff had been authorized to use this previously prescribed medication.

78. McWilliams October 6, 2010 Declaration that was submitted to the court to try to defend against Plaintiff's 28 U.S.C. § 2241 petition bears indicia that it was not prepared properly, perhaps not entirely by him, perhaps by others, including Ben-Shmuel, and one such indicium is that one page seven at line 28 the sentence reads "and all supporting documentation" then goes on to page eight at line one which continues this sentence with "stemming relating to this proposed disciplinary action against Mr. Yagman stemming [*sic*] from the positive results of the urinanalysis test." Moreover, pages one through seven all appear in a clear, unsmudged font and page eight, the signature page, appears in an unclear bolder, smudged font, supporting the assertion that Ben-Shmuel authored the McWilliams Declaration, that McWilliams had only the signature page eight and did not author pages one through seven, in order for both Ben-Shmuel and McWilliams to mislead the habeas court and to obstruct justice.

17

80.-89. Reserved.

90. Plaintiff was deprived of good conduct time credits as the result of a disciplinary proceeding that did not comport with the requirements of due process.

91. It is unconstitutional for there to be a disciplinary forfeiture of a prisoner's good conduct time).

92. Procedural protections are required in connection with a prison disciplinary hearing, including timely written notice of the charged misconduct, an impartial hearing *body*, an opportunity to present evidence, assistance for illiterate inmates, or in complex cases, and a written statement of the evidence relied on and reasons for any sanction.

93. Due process requires that there be some reliable evidence to support the findings made in the disciplinary hearing.

94. Plaintiff alleges that there were multiple due process violations in his disciplinary proceeding.

95. The evidence in the record of the CDC proceeding is contradictory as to when the "incident" legally occurred, variously citing the date when Plaintiff allegedly ingested the drug in question, the date when he submitted the urine sample, the date when the sample was tested, and the date when Marvin Gardens staff became aware of the test results and the possible violation.

96. The record does not establish when Plaintiff actually was served with the Incident Report.

97. The CDC Report credits the written statement of Turner that she served the Incident Report on July 2, 2010, at 11:24 a.m., and found that this occurred when the Marshal's service returned Plaintiff to close custody.

98. The BOP and Shuh, however, have admitted that the BOP's own records indicate that the process of transferring Plaintiff to "close custody" did not begin until 3:19 p.m. on July 2, 2010.

99. Turner's testimony on the issue was false.

100.  Although Plaintiff testified that he was *not* served by Ms. Turner on the date and time Turner claimed, the CDC chairman Kincey did not require Ms. Turner's presence as a live witness at the hearing, and did not seek any evidence to verify her contested evidence as presented after the hearing ia written memorandum.

101. The asserted reason for not calling Ms. Turner as a witness – that the CDC "could not jeopardize center safety by calling Monitor Turner to testify," is not supported by any evidence, or even any explanation of how calling her to testify would have jeopardized security, or why, for example, she could not have appeared telephonically.

102. The CDC Report conceded that the Incident Report was *not* timely served on Plaintiff, even if it had been served on July 2, 2010.

103. The waiver of this procedural requirement was accepted by the CDC Report and McWilliams, but there was no basis to accept it.

104. The undated CDC Report on the July 8, 2010 CDC Hearing, in discussing "Specific Evidence Relied on to Support the Findings," states that "the Incident Report was *not* served to you within 24 hrs of the offense as it resulted in a return to custody and you were deemed a flight risk." (Emphasis added.)

105. The only evidence in the record of the CDC proceeding that could possibly support this finding is the memorandum by Mike Reed, addressed to

"Wes Mayhew—CCM," and cited above, which states: "Inmate Yagman was considered a flight risk due to his offense resulting in a return to close custody. As a result, the Incident Report was not served to him within 24 hrs of the incident. We respectfully request a waiver for that part of the CDC process." But this was not done until nearly a month after it allegedly had occurred.

106. The memorandum bears a handwritten annotation "Approved," with initials that are not identifiable.

107. The memorandum is dated July 28, 2010, the very date on which McWilliams allegedly reviewed the completed CDC Report and attached record.

108. It is not possible that this memo was, could have been, entered into the record before the CDC Report was written, yet there is no other evidence in the record to support the CDC Report's conclusion about the delay in service being based on Plaintiff being deemed a "flight risk."

109. The memorandum states that Plaintiff was deemed a "flight risk" (allegedly *prior to* July 2, 2010), because of "his offense resulting in a return to close custody."

110. Plaintiff was *not* actually found to have committed an offense, and ordered returned to close custody, until 26 days later when McWilliams' made his decision on July 28, 2010.

111. It was not recommended that Plaintiff be sanctioned by a return to close custody until the unknown date on which the CDC Report was completed, and the record does not indicate whether the CDC chairman advised Plaintiff on July 8, 2010, that he would be making that recommendation.

112. It was impossible for the responsible officials, Reed, Kinsey, Mayhew, and McWilliams, to have known, *prior to* July 2, 2010, the outcome of a hearing that had not yet even been scheduled.

113. These officials actually did consider Plaintiff a flight risk at the time they delayed serving the Incident Report.

114. What the officials did know at the time was only that Plaintiff would be transferred to the MDC, to await a disciplinary hearing.

115. There never was any evidence to support the conclusion that this eventuality would have made it reasonable to consider Plaintiff a flight risk at that time, especially considering that the disciplinary record showed that Plaintiff had a long history of complying with all changes in custody level, and that, on May 13, 2010, Plaintiff had been released on furlough to transfer himself from a no security prison camp in Butner, North Carolina to a halfway house, Marvin Gardens, in California.

116. Defendants' failure to give Plaintiff timely notice of the Incident Report and their failure to notify Plaintiff until some time after he had been taken into custody for transfer to the MDC made it more difficult for Plaintiff to obtain evidence to defend himself from the disciplinary charges, and thereby violated his rights to both procedural and substantive due process of law.

117. Plaintiff was not afforded the minimum of 24 hours' notice before the CDC hearing.

118. Plaintiff was given defective, unconstitutional notice, in that the actual CDC Notice served on him at some time on July 7, 2010 states on its face that the CDC Hearing would be held at 4:00 p.m. on July 7, 2010.

119.  This constitutes a serious procedural due process violation when it is combined with the fact that the two witnesses whom Plaintiff requested for the hearing were not called.

120. The failure to call the other witness Plaintiff requested, Mr. Uyeda, had no justification and serious consequence.

121. The cited reason was simply that Mr. Uyeda no longer was employed by the organization that at that time – defendant Cornell Companies – ran the Marvin Gardens RCC, and that is not a reason addressed in any of the notices given to Plaintiff before the hearing, there is no explanation as to why Mr. Uyeda could not have been called, there is no evidence of any attempt to contact Mr. Uyeda, there is no explanation as to why the hearing could not have been postponed to allow Mr. Uyeda to be contacted, and there is no explanation as to why Mr. Uyeda could not have been contacted and allowed to submit written evidence after the hearing as occurred with Ms. Turner.

122.  The lack of Mr. Uyeda's testimony was very significant.

123. The conclusions drawn by the CDC chairman, Kincey, and DHO, McWilliams, are that the positive drug test can be explained by Plaintiff's admission (which never was made) that Plaintiff took Donnatal or Bellatal, a medication containing Phenobarbital.

124. The point at issue was whether, in so doing, Plaintiff violated any relevant institutional rules.

125. There was no evidence that Plaintiff violated the specific rules of Marvin Gardens RCC, which have to do with medications being brought into the

institution, and not with medications Plaintiff may have taken when he was authorized to be off-site.

126. At issue in the disciplinary process was the question whether, in taking Donnatal, Plaintiff violated a rule against taking a drug not prescribed by medical staff.

127. The BOP admitted that there was no medical staff at Marvin Gardens.

128. Plaintiff had presented evidence of a list of medications, dated March 31, 2008, which he had presented to the BOP at a prior institution, Butner.

129. That list includes "Bellatal ER (Donnatal); as needed for stomach cramping," but does not indicate that Bellatal or Donnatal contains Phenobarbital.

130. Plaintiff gave the same list to Mr. Uyeda, when Plaintiff was processed into Marvin Gardens, and Mr. Uyeda did *not* advise him that he could *not* take prescribed medications on the list.

134. Mr. Uyeda clearly was in a position to confirm or to deny this, yet the CDC chairman, Kincey, made no effort to contact him.

135. Instead, the CDC Report – meaning Kincey, cites as a "fact" that Plaintiff "never submitted any prescription medication to staff [meaning Mr. Uyeda] for review or approval prior to use," although the purported fact is false.

136. The CDC Report – again, meaning Kincey, relies on the statement in the Incident Report that "review of the medication log indicates inmate Yagman was not approved for any medication that would produce a positive for the substances."

137. McWilliams relied on and ratified all of Kincey's findings and conclusions and thereby violated Plaintiff's due process rights.

138. Kincey and McWilliams therefore (1) falsely found that there was a medication log for Plaintiff, and that Plaintiff had been approved for some medications; (2) the medication log in question was not in Kincey's and McWilliams' records; (3) there was no evidence as to whether or not the log, like the list submitted by Plaintiff, mentioned Bellatal or Donnatal, without identifying it as containing Phenobarbital or as a Barbiturate; (4) there was no evidence that the staff member who completed the Incident Report, defendant Del Campo, had any qualifications that would have enabled her to identify Bellatal or Donnatal as a substance that could have produced a positive test; and, (5) the all of the evidence indicated that the staff member, Del Campo, and the CDC chairman, Kincey, both misunderstood the test results positive for two substances, Barbiturates and Phenobarbital, when, in fact, it found a positive for Barbiturates in general, confirmed for Phenobarbital in particular.

139. The record did not include any competent, affirmative evidence that Plaintiff was *not* approved to take Donnatal, although dispositive evidence on that crucial issue was available.

140. As a result of all of the procedural violations, Plaintiff not receive a constitutionally-required impartial hearing.

141. McWilliams, McFadden, Lappin, Keeney, and Samuels, each and all accepted without question all the evidence damaging to Plaintiff, even when rebutted by Plaintiff or contradicted by other evidence, and allowed such evidence to be added to the record after the July 8, 2010 hearing, and as late as July 28, 2010; but, on the contrary, simply rejected the evidence supporting Plaintiff, and

24

made no efforts to obtain other evidence that either might have supported Plaintiff or resolved crucial issues in question on the record evidence.

142.  In addition to these instances in which Plaintiff's right to procedural due process were violated, and the disciplinary decision in Plaintiff's case did not even meet the "some evidence" standard required by due process.

143.  Thus, the CDC chairman's conclusion, cited above, and as affirmed, approved, ratified, and condoned by McFadden, Lappin, Keeney, and Samuels, all of whose custom it mindlessly was to do so, that Plaintiff "never submitted any prescription medication to staff for review and or approval prior to use," was contradicted by the only relevant evidence found in the record, and not supported by any affirmative evidence, and hence was wrong.

144.  In light of the above, Kincey's finding that Plaintiff violated "Code 112," and McWilliams', McFadden's, Lappin's, Keeney's, and Samuels', all of whose custom it mindlessly was to do so, decisions upholding that finding and sanctioning Plaintiff with the loss of 40 days good conduct time credits and a return to close custody, were not based on evidence and were arbitrary and capricious, and in violation of due process of law.

145. The process that resulted in the disciplinary decision revoking Plaintiff's good time credits and returning Plaintiff to close custody was unconstitutional and denied to Plaintiff due process of law.

146. The disciplinary decision revoking Plaintiff's good time credits and returning Plaintiff to close custody was unconstitutional and denied to Plaintiff due process of law.

147. Each and all of defendants Reed, Fowler, Kincey, Rutherford, Turner, and Del Campo, participated in, conspired in and in part effectuated both the disciplinary process and the disciplinary decision, and therefore each and all of them are liable for participating in depriving Plaintiff of Plaintiff's constitutional rights.

148. Ben-Shmuel and Schuh violated Plaintiff's constitutional right to due process by unduly delaying Plaintiff's prosecution of a 28 U.S.C. § 2241 petition and by receiving and not providing to Plaintiff McFadden's disposition of Plaintiff's appeal from McWilliams denial of Plaintiff's appeal from Kincey's disciplinary finding, while simultaneously representing to the court that Plaintiff had failed prudentially to exhaust administrative remedies.

149. The disciplinary adjudication revoking good time credits and returning Plaintiff to close custody was recommended to be vacated on October 22, 2010 and judgment was entered on that recommendation on October 1, 2012.

150. As a direct result of the October 22 recommendation, Mayhew, McWilliams, and McFadden vacated the adjudication and ordered that a new hearing be held.

151. As a result of that vacating of the adjudication, Mayhew, McWilliams, and McFadden ordered Ali to re-adjudicate the disciplinary matter.

152. Plaintiff was not provided proper notice of the re-adjudication thus further violating his due process rights.

153. Plaintiff again was not permitted to present witnesses or evidence at the re-hearing that Ali held on or about November 3, 2010.

154. Ali re-adjudicated the matter and again found Plaintiff culpable, but dishonestly and manipulatively adjudicated the matter with the purpose and effect of protecting his predecessors who participated in prior adjudication from culpability for the due process violations which they had perpetrated.

155. In violation of applicable BOP procedures, Ali did not provide a written record of his adjudication to Plaintiff, with the improper purpose of preventing Plaintiff from contesting or appealing Ali's adjudication.

156. Plaintiff on November 12, 2010 requested in writing that Ali provide to Plaintiff the report pertinent to the November 3 re-hearing, along with a grievance form "10," so that Plaintiff could appeal the determination to McFadden.

157. Ali failed and refused to provide the information and form requested with the intent of preventing an appeal, and thereby violated Plaintiff's due process right to appeal, thus violating Plaintiff's right to due process.

155. Meinberg, Mayhew, McWilliams, McFadden, and Ali all conspired to achieve the results enumerated in the immediately-preceding seven averments.

156. Adiele was Plaintiff's case manager at MDC.

157. Adiele received McFadden's August 20 adjudication of Plaintiff's grievance and failed and refused to provide it to Plaintiff to prevent Plaintiff from filing an appeal to the last appeal level, thereby prolonging Plaintiff's incarceration.

158. Previously, and in order to attempt to thwart Plaintiff from contesting the disciplinary charges against Plaintiff, after July 7 and before July 14, Adiele arranged for Plaintiff to be transferred from MDC to the San Bernardino County Jail, so as to isolate Plaintiff and render it impossible for Plaintiff to meet with his

several attorneys who had been visiting Plaintiff at MDC in Los Angeles virtually every day, beginning on July 3.

159. Adiele knew Plaintiff's reputation as a successful plaintiffs' federal civil rights attorney and sought to expose Plaintiff to the risk of retaliation and physical harm at the San Bernardino County Jail.

160. Plaintiff advised Adiele that were Plaintiff transferred to that Jail Plaintiff would be exposed to harm.

161. Adiele consulted with Meinberg, as a result of this.

162. Adiele and Meinberg then arranged to have Plaintiff transferred from MDC in Los Angeles to the San Bernardino County Jail on July 15, 2010, but to be placed in solitary confinement at that Jail, where Plaintiff was placed.

163. In part, because of the additional stress that this placed on Plaintiff – being placed in a tiny cell, in a coffin-like bunk, and with no windows, shortly after Plaintiff's placement in this cell late in the evening on July 15, Plaintiff suffered a heart attack, and in the early morning hours of July 16 was found on the floor of his cell and taken to the Arrowhead Regional Medical Center, where he spent July 16-19.

164. Upon Plaintiff's discharge from Arrowhead, Plaintiff was returned to the San Bernardino County Jail and in the early morning hours of July 20 was returned from that Jail to MDC in Los Angeles.

165. Kincey, who was the CDC disciplinary hearing officer, concealed evidence, refused to permit the introduction of exculpatory evidence, refused to consider evidence, refused to permit the calling of any witnesses or to consider Plaintiff's witnesses, intentionally denied Plaintiff the right to present Plaintiff's

defense, and his and the other Defendants' conduct resulted in depriving Plaintiff of the process to which Plaintiff was due, depriving Plaintiff of good-time credits undeservedly, forcing Plaintiff to remain in close custody and not to be released to home custody on July 23, 2010 as was to have occurred, and deprived Plaintiff, and deprived Plaintiff of rights also as a substantive matter.

166. Both the procedures employed by Kincey and ratified up the chain of command by the other Defendants and the result were wrong.

167. Plaintiff claims damages for each and all deprivation of his civil rights and use of wrong and unconstitutional procedures, damages for deprivation of good time credits, damages for being placed in close custody and not being able to be sent to his home on July 23, 2010, and damages for deceit and bias on the part of the decisionmaker Defendants.

168. Ali, Lappin, Mayhew, Meinberg, McFadden, Keeney, West, and Holder, each and all failed and refused to provide a written disposition of the November 3, 2010 re-hearing at which Ali presided and for which he allegedly made a disposition.

169. As a direct, but for, and proximate result of the conduct and customs of all BOP defendants, as well as Ben-Shmuel and Shuh, Plaintiff suffered additional constitutional violations as follows, from July 2, 2010 to November 8, 2010,

a. Plaintiff was not provided a mattress on which to sleep,

b. Plaintiff was not provided a pillow on which to sleep,

c. Plaintiff was subjected to unsanitary conditions of confinement in that

i. Plaintiff regularly was exposed to toxic mold,

ii. Plaintiff was subjected to a backed-up and overflowing toilet in his

cell into which urine and excrement from the adjoining cell

every day regularly flowed, and,

iii. Plaintiff on or about July 15-16, 2010 suffered panic, fear,

claustrophobia, and a heart attack and the attendant pain and

extreme emotional distress associated with that happening, and for

four days was confined to Arrowhead Regional Medical Center,

each and all of which were unconstitutional.

170-260. Reserved.

## COUNT 1

(Violation of constitutional rights, against CORNELL COMPANIES, INC., MIKE REED, KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E. ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA, DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC., MARK DEMEO, RICHARD WILBER, WAYNE ROSS, ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW, RANDY J. McWILLIAMS, HERIBERTO TELLEZ, RANSOM ALI, MICHAEL L. BENOV,  ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK ANTHONY WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

261.  By intentionally failing timely to adjudicate and return to Yagman his administrative grievance, and by causing, ratifying, approving, condoning this, the defendants named in this Count thereby obstructed and deprived Yagman of due process of law, under the Fifth Amendment to the United States Constitution.

## COUNT 2

(Violation of constitutional rights, against CORNELL COMPANIES, INC., MIKE REED, KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E. ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA, DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC., MARK DEMEO, RICHARD WILBER, WAYNE ROSS, ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW, RANDY McWILLIAMS, HERIBERTO TELLEZ, RANSOM ALI, MICHAEL L. BENOV,  ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK ANTHONY WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

262.  Defendants named in the immediately-preceding Count agreed and/or understood that they all would do, or fail to do, the things set forth hereinabove in the immediately-preceding Count 1, and in that conspired to harm Yagman by violating his constitutional rights.

## COUNT 3

(Violation of constitutional rights, CORNELL COMPANIES, INC., MIKE REED, KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES

BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E.
ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN
FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN
FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA,
DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC.,
ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA
BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN,
WES J. MAYHEW, RANDY McWILLIAMS, HERIBERTO TELLEZ,
ALEXANDER SINAVSKY, NICOLE KNIGHT, MICHAEL L. BENOV,
ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN
M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK ANTHONY
WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

263.  By exposing Yagman daily to toxic mold, by forcing Yagman to inhabit a prison cell that was inhumanely unsanitary, by virtue of an improperly-functioning toilet, and by refusing to provide Yagman with either a mattress or a pillow, the defendants named in this Count 3 thereby violated Yagman's right not to be subjected to cruel and unusual punishment, under the Eighth Amendment to the United States Constitution.

**COUNT 4**
(Conspiracy to violate civil rights, CORNELL COMPANIES, INC., MIKE REED,
KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD,
KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R.
NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E.
ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC.,
POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES
BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E.
ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN
FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN
FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA,
DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC.,
ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA
BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN,
WES J. MAYHEW, RANDY McWILLIAMS, HERIBERTO TELLEZ,
ALEXANDER SINAVSKY, NICOLE KNIGHT, MICHAEL L. BENOV,
ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN

1  M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK ANTHONY
2  WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

3     264.  Defendants named in the immediately-preceding Count 3 agreed

4  and/or understood that they all would do, or fail to do, the things set forth

5  hereinabove in the immediately-preceding Count 3, and in that conspired to harm

6  Yagman by violating his constitutional rights.

**COUNT 5**

(Violation of constitutional right, against CORNELL COMPANIES, INC., MIKE
REED, KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN
RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN,
JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN
E. ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC.,
POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES
BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E.
ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN
FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN
FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA,
DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC.,
ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA
BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN,
WES J. MAYHEW, RANDY McWILLIAMS, HERIBERTO TELLEZ,
ALEXANDER SINAVSKY, NICOLE KNIGHT, MICHAEL L. BENOV,
ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN
M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK ANTHONYY
WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

21     265.  Intentionally forcing Yagman to spend from July 2 – November 8,

22  2010 sleeping on a sheet of metal with no mattress and no pillow was inhumane

23  and the defendants named in this Count 5 thereby violated Yagman's right not to

24  be subjected to cruel and unusual punishment, under the Eighth Amendment to the

25  United States Constitution.

**COUNT 6**

(Conspiracy to violate civil rights, against CORNELL COMPANIES, INC., MIKE
REED, KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN
RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN,

JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E. ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA, DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC., ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW, RANDY McWILLIAMS, HERIBERTO TELLEZ, ALEXANDER SINAVSKY, NICOLE KNIGHT, MICHAEL L. BENOV, ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN M. KEENEY, CHARLES E. SAMUELS, and TWENTY UNKNOWN NAMED DEFENDANTS)

266.  Defendants named in the immediately-preceding Count 5 agreed and/or understood that they all would do, or fail to do, the things set forth hereinabove in the immediately-preceding Count, and in that conspired to harm Yagman by violating his constitutional rights.

**COUNT 7**

(Violation of civil rights by initiating a baseless disciplinary charge, against CORNELL COMPANIES, INC., MIKE REED, KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E. ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA, DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC., MARK DEMEO, RICHARD WILBER, WAYNE ROSS, ELIEZEER BEN-SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH, CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW, RANDY J. McWILLIAMS, HERIBERTO TELLEZ, RANSOM ALI, MICHAEL L. BENOV,  ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN M.

KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK ANTHONY
WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

267. Defendants initiated and prosecuted a baseless disciplinary charge
against Plaintiff, there was no probable cause to initiate or to prosecute that
charge, the charge was terminated in Plaintiff's favor, Plaintiff was harmed
thereby, and thus Plaintiff's right under the Fourth Amendment was violated.

**COUNT 8**

(Conspiracy to violate civil rights, by initiating a baseless disciplinary charge,
against CORNELL COMPANIES, INC., MIKE REED, KEVIN KINCEY,
JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE
TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN
L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP,
INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION
COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES BLACK, JOHN J.
BULFIN, NORMAN A. CARLSON, CLARENCE E. ANTHONY, JULIE M.
WOOD, RICHARD H. GLANTON, ANNE NEWMAN FOREMAN,
CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN FULLER,
BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA, DAVID J.
VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC., MARK
DEMEO, RICHARD WILBER, WAYNE ROSS, ELIEZEER BEN-SHMUEL,
SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH, CARMEN
NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW,
RANDY J. McWILLIAMS, HERIBERTO TELLEZ, RANSOM ALI, MICHAEL
L. BENOV,  ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III,
KATHLEEN M. KEENEY, CHARLES E. SAMUELS, and TWENTY
UNKNOWN NAMED DEFENDANTS)

268. Defendants conspired to initiate and prosecuted a baseless disciplinary
charge against Plaintiff, there was no probable cause to initiate or to prosecute that
charge, the charge was terminated in Plaintiff's favor, Plaintiff was harmed
thereby, and thus Plaintiff's right under the Fourth Amendment was violated.

**COUNT 9**

(Malicious prosecution under state law for initiating a baseless disciplinary
charge, against CORNELL COMPANIES, INC., MIKE REED, KEVIN KINCEY,
JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD, KATHERINE

TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R. NIESER, CATHRYN
L. PORTER, PATRICK N. PERRIN, BENJAMIN E. ERWIN, GEO GROUP,
INC., CALIFORNIA THE GEO GROUP, INC., POLITICAL ACTION
COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES BLACK, JOHN J.
BULFIN, NORMAN A. CARLSON, CLARENCE E. ANTHONY, JULIE M.
WOOD, RICHARD H. GLANTON, ANNE NEWMAN FOREMAN,
CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN FULLER,
BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA, DAVID J.
VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC., MARK
DEMEO, RICHARD WILBER, WAYNE ROSS, ELIEZEER BEN-SHMUEL,
SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH, CARMEN
NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW,
RANDY J. McWILLIAMS, HERIBERTO TELLEZ, RANSOM ALI, MICHAEL
L. BENOV, ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III,
KATHLEEN M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, DEREK
ANTHONY WEST, and TWENTY UNKNOWN NAMED DEFENDANTS)

269. Defendants initiated and prosecuted a baseless disciplinary charge
against Plaintiff, there was no probable cause to initiate or to prosecute that
charge, the charge was terminated in Plaintiff's favor, Plaintiff was harmed
thereby, and thus Defendants maliciously prosecuted Plaintiff.

270.  Defendants are liable based on respondeat superior.

**COUNT 10**

(Conspiracy to maliciously prosecuted, under state law, by initiating a baseless
disciplinary charge, against CORNELL COMPANIES, INC., MIKE REED,
KEVIN KINCEY, JENNIFER MARTIN DEL CAMPO, JOHN RUTHERFORD,
KATHERINE TURNER, KIM FOWLER, JAMES E. HYMAN, JOHN R.
NIESER, CATHRYN L. PORTER, PATRICK N. PERRIN, BENJAMIN E.
ERWIN, GEO GROUP, INC., CALIFORNIA THE GEO GROUP, INC.,
POLITICAL ACTION COMMITTEE, INC., GEORGE C. ZOLLEY, JAMES
BLACK, JOHN J. BULFIN, NORMAN A. CARLSON, CLARENCE E.
ANTHONY, JULIE M. WOOD, RICHARD H. GLANTON, ANNE NEWMAN
FOREMAN, CHRISTOPHER C. WHEELER, JOHN M. HURELY. STEPHEN
FULLER, BRIAN R. EVANS, ANN M. SCHLARB, THOMAS M. WIERDSMA,
DAVID J. VENTURELLA, REDWOOD TOXICOLOGY LABORTORY, INC.,
MARK DEMEO, RICHARD WILBER, WAYNE ROSS, ELIEZEER BEN-
SHMUEL, SARAH M. SCHUH, GEORGE ADIELE, BRENDA BURCH,

CARMEN NAVARRO, NICOLE KNIGHT, ROBERT E. McFADDEN, WES J. MAYHEW, RANDY J. McWILLIAMS, HERIBERTO TELLEZ, RANSOM ALI, MICHAEL L. BENOV,  ERWIN MEINBERG, DAVID SHINN,  HARLEY G. LAPPIN III, KATHLEEN M. KEENEY, CHARLES E. SAMUELS, ERIC HOLDER, and TWENTY UNKNOWN NAMED DEFENDANTS)

271. Defendants conspired to initiate and prosecuted a baseless disciplinary charge against Plaintiff, there was no probable cause to initiate or to prosecute that charge, the charge was terminated in Plaintiff's favor, Plaintiff was harmed thereby, and thus Plaintiff's right not to be subjected to a malicious prosection conspiracy was violated.

272. Defendants are liable based on respondeat superior.

273.-341. Reserved.

**COUNT 11**
(Racketeer Influenced and Corrupt Organizations, RICO, and RICO conspiracy against all defendants)

342. All of the defendants together constitute an enterprise within the meaning of 18 U.S.C. 1961(4), and are a RICO enterprise.

a. Cornell Companies was a separate RICO enterprise.

b. GEO was and is a separate RICO enterprise.

c. Defendants who are associated with or who worked for Cornell are a separate RICO enterprise.

d. Defendants who are associated with or who worked or work for GEO are a separate RICO enterprise.

e. The BOP defendants constitute a separate RICO enterprise.

f. The Cornell, GEO, and BOP defendants together constitute a separate RICO enterprise.

343.  As regards the dealings alleged in the instant action, all defendants together are an enterprise, and as well each separately-described group as defined

in averment 342.a.-f. is an enterprise, each and all within the meaning of 18 U.S.C. § 1961(4).

344. The activities of all defendants and all enterprises affected and affect interstate commerce.

345. Defendants received income, directly and/or indirectly, by way of, *inter alia*, stock benefits, stock trade returns and profits, stock options, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, *etc.,* from the pattern of racketeering activity alleged herein and used that income in the acquisition of an interest in and/or operation of the enterprises, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprises through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

346. Defendants, being associated with said enterprise and/or enterprises, conducted and/or participated in said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

347.  The pattern of racketeering activities included a continuous pattern and practice potentially involving activities, including any potential civil RICO predicates, set forth in the RICO predicate statutes, including extortion, mail fraud, wire fraud, fraudulent concealment, obstruction of justice pursuant to 18 U.S.C. §§ 1503 and 1512, and of the federal money laundering statutes.

348. Defendants, and each of them, corruptly endeavored to influence officers in courts of the United States in the discharge of those officers' duties and corruptly influenced, obstructed, impeded, and/or endeavored to influence, obstruct, or impede the due administration of justice in a United States Court.

349. Defendants conspired to do the things alleged in the immediately-preceding averment.

350. Defendants, and each of them, corruptly engaged in misleading conduct toward other persons, including Plaintiff, with intent to influence, delay, or prevent the testimony of a person in an official proceeding, to cause and induce a person to withhold testimony, or withhold a record, document, or other object, from an official proceeding, to conceal an object with intent to impair the object's integrity or availability for use in an official proceeding, to hinder, delay, or prevent the communication to a judge of the United States of information relating to the commission or possible commission of a federal offense or release pending judicial proceedings, corruptly concealed records and documents, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, or otherwise obstructed, influenced, or impeded an official proceeding, or attempted to do so.

351. Defendants conspired to do the things alleged in the immediately-preceding averment.

352. Each of and the various enterprises' activities have occurred on more than one and on many occasions over at least the past 10 years and have been done on numerous occasions and constitute at least three acts.

353. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, and obstruction of justice under 18 U.S.C. §§ 1503 and 1512, and pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics and are not isolated events, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

354. These wrongful acts over a period of years enabled and continue to enable defendants to acquire and maintain, both directly and indirectly, interests in and control of the racketeering enterprises in which they all engage.

355. Defendants' activities led to their control and acquisition over their respective enterprises and resulted in the injuries to Plaintiff, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

356. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial defendants engaged in and condoned racketeering activities, and when the names of the managerial, presently Unknown Named Defendants are obtained, those persons will be added as defendants.

357. The willful and/or negligent mismanagement of the enterprises for over 10 years, with knowledge by defendants charged with management and potentially other defendants that the enterprises were and continue to be operated as RICO enterprises, directly caused the harm to plaintiff, as alleged herein.

358. The acquisition of control of the enterprise by its participants who engaged in RICO predicate acts harmed Plaintiff.

359. The various enterprises formed by the defendants herein were and are enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

360. Plaintiff was harmed in that his business, property, and employment each and all of which were subjected to, negatively affected by, and devalued by defendants' wrongful conduct.

361. Both directly and indirectly, defendants in the acts and instances alleged herein, and others, have conducted the RICO enterprises' affairs and have, as matters of fact and law, participated in the operation and *de facto* management of the RICO enterprises.

362. By the conduct alleged herein, each defendant participated in the operation and management of the RICO enterprises himself and herself and played some part in directing the enterprises' affairs.

363. Defendants unlawfully have engaged in the racketeering activities set forth in this Complaint and in the preceding averments and on numerous occasions during the past 10 years and before that, through a pattern of racketeering activity, and have acquired, directly and indirectly, control of the named enterprises.

364. Through a pattern of racketeering activities, as set forth hereinabove, defendants, and each of them, acquired and/or maintained, directly and/or indirectly, interests in and/or control of the RICO enterprises and their activities by, among other things, their own aggrandizement that flows therefrom.

365. By virtue of the allegations set forth hereinabove, some defendants were or are employed by, all defendants were or are associated with, and all defendants participated in, directly and/or indirectly, the RICO enterprise.

366. Defendants unlawfully have conspired, as set forth hereinabove, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued to do so with the aid and assistance of co-conspirators

## CLASS ACTION ALLEGATIONS

367. Plaintiff is a member of, and represents four discrete classes, each of whose defining characteristics is:

a. Class 1, all BOP prisoners nationwide who, because they were subjected to the wrongful conduct of BOP officials and employees who did not timely return to them their administrative grievance results, so that when they appealed to the

41

next grievance level their grievances were denied or rejected for failure to attach the disposition of the lower level grievance(s), and/or so that they were prevented from appealing to the next grievance level, damages, declaratory, and injunctive relief;

b. Class 2, all BOP prisoners at MDC-LA who, because they were subjected to the wrongful conduct of BOP officials and employees who did not timely return to them their administrative grievance results, so that when they appealed to the next grievance level their grievances were denied or rejected for failure to attach the disposition of the lower level grievance(s), and/or so that they were prevented from appealing to the next grievance level, damages, declaratory, and injunctive relief;

c. Class 3, all BOP prisoners at MDC-LA who, because they were subjected to the wrongful conduct of BOP officials and employees who forced them to reside in a prison cell whose toilet violated their right to be free from cruel and unusual punishment because it was unsanitary, damages, declaratory, and injunctive relief, and this class seeks damages, declaratory, and injunctive relief.

d. Class 4, all BOP prisoners, who were subjected to the wrongful conduct of BOP officials and employees who forced them to sleep in a prison cell on a piece of sheet metal with no mattress in violation of the right not to be subjected to cruel and unusual punishment, and this class seeks damages, declaratory relief, and injunctive relief.

368. Each class contains over 100 members, and each class is so numerous so that joinder of all members would be impracticable, and also, because only defendants know the names of all of the members of classes, and defendants are the only persons who have information sufficient to identify all the members of classes, it is impracticable to join all the members of the class in this action.

369.  As to each of the four classes, there are only common questions of fact and  law with respect to that class and all of its members.

370. As to each of the four classes, the claim made by the representative party, Plaintiff, is typical of, identical to, and is the same as the claims of each of the four classes' class members.

371. The representative of each of the four classes, Plaintiff, fairly will represent and adequately protect the interests of all class members, and will do so both vigorously and zealously.

372. Prosecution of separate actions by individual class members would be impossible and would create a risk of inconsistent or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the class, and defendants have acted and will continue to act on grounds generally applicable to every class member, and the class questions not only predominate but are the only questions that exist.

374. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & (b)(1)(A),(B)(1),(2), and (3).

375. Presently, it is not possible accurately to measure the size of each of the four the classes, except that Class 3 consists of approximately 1,000 members.

376. The nature of the notices to be provided to each of the four classes' class members should be as follows:  defendants should be required to identify and to provide a suitable notice to all class members, so that their prisoners and former prisoners will have notice that there is a class to which they may belong and providing them an opportunity to opt-out of any of the classes.

**WHEREFORE**, Plaintiff requests relief against defendants, and each of them, as follows, on his own behalf and on behalf of class members whom he seeks to represent, as follows:

1.  General damages of more than $75,000.00, exclusive of interest and costs on all claims;

2.  Punitive damages of $1,000,000.00 against defendants in their individual capacities only;

3.  Declaratory relief;

4.  Injunctive relief;

5.  Costs of suit;

6.  Attorneys' fees;

7.  Out-of-pocket costs;

8.  Interest; and

9.  Such other relief as is just and proper.

_____
**STEPHEN YAGMAN**
For Stephen Yagman in his individual capacity only

## JURY DEMAND

Plaintiff Yagman demands trial by jury of all issues.

_____
**STEPHEN YAGMAN**
For Stephen Yagman in his individual capacity only

# NOTICE AND INSTRUCTION SHEET

Defendants are notified of the following:

1. Plaintiff represents himself unless and until this action might be certified as a class action;

2. Plaintiff does *not* receive electronic service of documents and must be served only pursuant to F.R. Civ. P. Rule 5, which allows service only by personal delivery to plaintiff, delivery to the reception at plaintiff's office, for which the receptionist is not required to sign and will not sign for, and the office is open Monday through Friday and not on court holidays only from 9:00 a.m. to 5:00 p.m., or by USPS first class (and not certified) mail only;

3. Telephone messages will be taken *only if* a message has content, *i.e.*, it states specifically and declaratively what information is sought to be communicated or what information is sought, and any message that does not contain such information will not be taken down by the reception and not communicated to plaintiff: a message such as "I would like to speak to plaintiff concerning this case," will not be taken down;

4. A certificate of service of papers required to be served is insufficient if it refers to an "office out-box" service or knowledge of how papers placed in a out-box would be handed. This is not permitted in federal courts and unless a certificate of service unambiguously indicates that the person who executed it is *the person* who either himself or herself made personal delivery or himself or herself placed the service in a USPS mail depository, it will not be considered a valid certificate of service and a motion will be made to strike whatever document purportedly was served.  Receipt of a document that purportedly was served is not a substitute for proper and properly-certificated service.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [X] )

STEPHEN YAGMAN

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

CORNELL COMPANIES INC.

**(b) County of Residence of First Listed Plaintiff** LOS ANGELES
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** _____
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

STEPHEN YAGMAN
475 WASHINGTON BOULEVARD, VENICE BEACH, CA 90292-5287 (310)452-3200

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

| | |
|---|---|
| [ ] 1. U.S. Government Plaintiff | [X] 3. Federal Question (U.S. Government Not a Party) |
| [ ] 2. U.S. Government Defendant | [ ] 4. Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

| | | | | | |
|---|---|---|---|---|---|
| [X] 1. Original Proceeding | [ ] 2. Removed from State Court | [ ] 3. Remanded from Appellate Court | [ ] 4. Reinstated or Reopened | [ ] 5. Transferred from Another District (Specify) | [ ] 6. Multi-District Litigation |

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [X] Yes [ ] No   [X] **MONEY DEMANDED IN COMPLAINT:** $ OVER $1,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

RICO AND BIVENS (CIVIL RIGHTS)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 400 State Reapportionment | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [ ] 830 Patent |
| [ ] 410 Antitrust | [ ] 130 Miller Act | [ ] 290 All Other Real Property | | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 430 Banks and Banking | [ ] 140 Negotiable Instrument | **TORTS** | **TORTS** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 460 Deportation | | [ ] 310 Airplane | [ ] 370 Other Fraud | **Other:** | [ ] 862 Black Lung (923) |
| [X] 470 Racketeer Influ- enced & Corrupt Org. | [ ] 151 Medicare Act | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 480 Consumer Credit | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 490 Cable/Sat TV | | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 850 Securities/Com- modities/Exchange | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 340 Marine | **BANKRUPTCY** | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [ ] 890 Other Statutory Actions | [ ] 160 Stockholders' Suits | [ ] 345 Marine Product Liability | [ ] 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 891 Agricultural Acts | [ ] 190 Other Contract | [ ] 350 Motor Vehicle | [ ] 423 Withdrawal 28 USC 157 | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 893 Environmental Matters | [ ] 195 Contract Product Liability | [ ] 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | [ ] 690 Other | |
| [ ] 895 Freedom of Info. Act | [ ] 196 Franchise | [ ] 360 Other Personal Injury | [ ] 440 Other Civil Rights | **LABOR** | |
| [ ] 896 Arbitration | **REAL PROPERTY** | [ ] 362 Personal Injury- Med Malpractice | [ ] 441 Voting | [ ] 710 Fair Labor Standards Act | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | [ ] 210 Land Condemnation | [ ] 365 Personal Injury- Product Liability | [ ] 442 Employment | [ ] 720 Labor/Mgmt. Relations | |
| | [ ] 220 Foreclosure | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 443 Housing/ Accommodations | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | [ ] 230 Rent Lease & Ejectment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 445 American with Disabilities- Employment | [ ] 751 Family and Medical Leave Act | |
| | | | [ ] 446 American with Disabilities-Other | [ ] 790 Other Labor Litigation | |
| | | | [ ] 448 Education | [ ] 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number: LA CV14 07555-SVW (CW),

CV-71 (06/14)     CIVIL COVER SHEET     Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | | ☐ NO.  Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☒ Yes ☐ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | | ☒ NO.  Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☒ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes ☒ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. ➡ | ☐ Yes ☒ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E, below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** *Stephen Yagman*   DATE:  SEPT. 29, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |