UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN YAGMAN, individually, and in his capacity as class representative<br><br>Plaintiffs,<br><br>v.<br><br>REDWOOD TOXICOLOGY LABORATORY, INC., et al.,<br><br>Defendants. | No. CV 14-07555-SVW (CW)<br><br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.  For reasons stated below, the Defendants' motions to dismiss should be granted and this action should be dismissed with prejudice.

### I. THE PRESENT PROCEEDINGS

Plaintiff Stephen Yagman opened this action by filing his Complaint on September 29, 2014. [Docket no. 1.]  The Complaint names

1

some fifty-five defendants. Plaintiff filed the Complaint pro se. On December 5, 2014, attorney Joseph Reichmann filed an appearance on behalf of Plaintiff. [Docket no. 42.] The Redwood Defendants[1] filed an Answer on December 4, 2014 [Docket no. 39]; the Federal Defendants[2] filed a Motion to Dismiss on December 29, 2014 [Docket no. 62] in which the Geo Group Defendants[3] filed joinders. [Docket nos. 65, 70.]

On January 20, 2015, Plaintiff filed a First Amended Complaint ("FAC"). [Docket no. 99.] This filing rendered Defendants' motions to dismiss the original Complaint moot. [Docket no. 121.]

Now before the Court are four Motions to Dismiss filed by each group of Defendants on February 4 and 6, 2015, and March 3, 2015. [Docket nos. 114, 118, 119, 153.] Plaintiff filed Oppositions, and Defendants filed Replies.[4]

---

[1] The Redwood Defendants are Redwood Toxicology Laboratory Inc. ("Redwood"), Mark J. Demeo, Wayne Ross, and Richard R. Wilber. Defendant Alere, Inc., Redwood's parent corporation, was added in the First Amended Complaint.

[2] The Federal Defendants are George Chinyere Adiele, Ransom Ali, Eliezeer Ben-Shmuel, Michael L. Benov, Brenda Burch, Eric Himpton Holder, Jr, Kathleen M. Keeney, Nicole Knight, Harley G. Lappin, III, Robert E. MCFadden, Wes J. Mayhew, Randy J. McWilliams, Erwin Carl Meinberg, Carmen Navarro, Charles E. Samuels, Sarah Marie Schuh, David Shinn, Alexander W. Sinavsky, Heriberto H. Tellez, and Derek Anthony West.

[3] The Geo Group Defendants are Geo Group Inc., Cornell Companies Inc., Clarence E. Anthony, James Black, John J. Bulfin, Norman A. Carlson, Brian R. Evans, Anne Newman Foreman, Stephen Fuller, Kim Fowler, Richard H. Glanton, John M. Hurely, James E. Hyman, Kevin Louis Kincey, John R. Nieser, Patrick N. Perrin, Cathryn L. Porter, Ann M. Schlarb, Katherine Turner, David J. Venturella, Christopher C. Wheeler, Thomas M. Wierdsma, Julie M. Wood, and George C. Zolley.

[4] Plaintiff's objections that the Defendants did not comply with Local Rule 7-3 and did not properly serve the motions on him are without merit and should be overruled.

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a claim for relief. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." Id. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare System, 534 F.3d 1116, 1121 (9th Cir. 2008)(quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that necessarily defeats the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984)(citing 2A Moore's Federal Practice ¶ 12.08).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained the pleading requirements of Rule 8(a)(2) and the requirements for surviving a Rule 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007)(per curiam), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007); see also Moss v. U.S. Secret Service, 572 F.3d 962 (9th Cir. 2009). The pleading standard of Rule 8 does not require "detailed factual allegations." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555); see also Erickson, 551 U.S. at 93; Moss, 572 F.3d at 968. However, a complaint does not meet the pleading standard if it contains merely "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Instead, to comply with the requirements of Rule 8(a)(2) and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.,556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This plausibility standard is not a probability requirement, but does ask for more than mere possibility; if a complaint pleads facts "merely consistent with" a theory of liability, it falls short of "the line between possibility and plausibility." Id. (quoting Twombly, 550 U.S. at 557).

The Supreme Court has set out a two-pronged approach for reviewing possible failure to state a claim. Iqbal, 556 U.S. at 678; see also Moss, 572 F.3d at 969-70. First, a reviewing court may identify statements in a complaint that are actually conclusions, even if presented as factual allegations. Id. Such conclusory statements (unlike proper factual allegations) are not entitled to a presumption of truth. Id. It is the statements' conclusory nature (rather than any fanciful or nonsensical nature) "that disentitles them to the presumption of truth." Id. at 681. Second, the reviewing court presumes the truth of any remaining "well-pleaded factual allegations," and determines whether the allegations and reasonable inferences from them plausibly support a claim for relief. Id. at 679; see also Moss, 572 F.3d at 969-70.

If the court finds that a complaint should be dismissed it may do

so with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000)(en banc). Leave to amend should be granted if it appears possible that the complaint's defects can be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). If, however, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss, 572 F.3d at 972.

### III.   FACTUAL AND LEGAL BACKGROUND

The events giving rise to this case occurred from late June 2010 to approximately November 8, 2010, while Plaintiff was a resident at the Marvin Gardens Residential Re-Entry Center ("Marvin Gardens") and was then transferred to the Metropolitan Detention Center-Los Angeles ("MDC-LA"). [FAC ¶¶ 30, 32, 169.]

Plaintiff alleges that on June 22, 2010, Marvin Gardens staff required him to undergo a random drug test and submitted the specimen to Redwood for testing. [Id., ¶¶ 32, 32.] The test came back positive for barbiturates, confirmed as phenobarbital. [Id., ¶34.]

Marvin Gardens staff prepared an Incident Report citing Plaintiff for using narcotics without a prescription. [Id., ¶¶ 34-37.] On July 2, 2010, Plaintiff was transferred to MDC-LA pending a disciplinary hearing because he was deemed a flight risk. [Id., ¶¶ 43, 54.] A disciplinary hearing was held at MDC-LA on July 8, 2010, and Plaintiff was found guilty of the charge. [Id., ¶¶ 53, 60.]

Plaintiff was sanctioned with the loss of forty days of good conduct credits and by transfer to a "secure facility," MDC-LA, where he had been held since July 2. [Id., ¶¶ 62, 62.] Plaintiff was released from MDC-LA on November 8, 2010. [Id., ¶ 7.]

The FAC catalogs a number of flaws in the disciplinary proceedings and in the administrative grievance process, including that Plaintiff was not allowed to present evidence that his positive test for phenobarbital was caused by prescription medication that Marvin Gardens staff previously approved. [See id., ¶¶ 11-28, 66-168.]

Plaintiff alleges various injuries arising from the disciplinary proceedings and the administrative grievance process, and asserts that these proceedings violated his due process rights. [See, e.g., id., ¶ 68-72, 140, 145-146, 152.] Plaintiff also alleges that while he was at MDC-LA, he suffered a heart attack, was not provided a mattress or a pillow, and was exposed to unsanitary conditions including toxic mold and a backed-up toilet. [Id., ¶¶ 163, 169.]

Based on these allegations, Plaintiff asserts eleven causes of action against the defendants: for violation of, and conspiracy to violate, his Fifth Amendment right to due process during the administrative grievance process (counts 1 and 2); for violation of, and conspiracy to violate, his Eighth Amendment right against cruel and unusual punishment by exposing him to mold and a malfunctioning toilet, by not providing bedding, and by causing Plaintiff to suffer a heart attack, while he was at MDC (counts 3-6); for violation of, and conspiracy to violate, his Fourth Amendment rights by instituting baseless disciplinary charges (counts 7 and 8); for malicious prosecution, and conspiracy to maliciously prosecute, for pursuing the baseless disciplinary charges (counts 9 and 10); and a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 (count 11). The FAC also includes class action allegations on behalf of Bureau of Prisons ("BOP") prisoners. [Id. ¶¶ 367-376.] These class claims arise out of the alleged flawed

administrative grievance process and conditions of confinement at MDC-LA (unsanitary conditions and lack of bedding).

The Defendants move to dismiss on several grounds, including that Plaintiff's claims are time-barred, and for failure to state a claim.[5]

### IV. DISCUSSION

**A. Plaintiff's Claims 1 through 10 are Time-Barred.**

Plaintiff asserts his claims for violation of his Fourth, Fifth, and Eight Amendment rights (counts 1-8) under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 387, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The statute of limitations applicable to a <u>Bivens</u> claim is the time period the forum state applies to personal injury actions. <u>Van Strum v. Lawn</u>, 940 F.2d 406, 410 (9th Cir. 1991) ("Accordingly, we hold that the personal injury statute of limitations properly applies to <u>Bivens</u> claims.") In California, the statute of limitations for personal injury actions is two years. <u>See</u> Cal. Code Civ. P. § 335.1. Malicious prosecution claims are subject to the same statute of limitations. <u>See</u> <u>Stavropoulos v. Superior Court</u>, 141 Cal. App. 4th 190, 197-98 (2006)(applying Cal. Code Civ. P. § 335.1 to malicious prosecution claim). California tolls the statute of limitations for up to two years during a prisoner's incarceration for causes of action that seek damages and that accrued while the person was imprisoned. <u>See</u> Cal. Code Civ. P. § 352.1.[6]

---

[5] These arguments apply in the same way to all Defendants so it is unnecessary to distinguish among them. Because these arguments are dispositive, the Court need not reach the other grounds presented in the motions.

[6] The statute of limitations is not tolled for claims for declaratory and injunctive relief relating to conditions of confinement. <u>See</u> Cal. Code Civ. P. § 352.1(c).

Plaintiff filed this action on September 29, 2014. Thus, claims that accrued prior to September 29, 2012 are time-barred unless they are salvaged by tolling.

### 1. **Plaintiff's Eighth Amendment Claims Are Untimely.**

Plaintiff's Eighth Amendment claims (counts 3-6) arise out of conditions that he claims led to his heart attack, his exposure to mold and sewage, and his being denied bedding during his incarceration at MDC-LA from July to November 2010. Assuming California's prisoner tolling statute applies, the two-year statute of limitations began to run when Plaintiff was released from MDC-LA on November 8, 2010. Plaintiff therefore had until November 8, 2012 to file these claims. Because Plaintiff filed this action nearly two years later on September 29, 2014, his Eighth Amendment claims are untimely.

### 2. **Plaintiff's Fifth Amendment, Fourth Amendment, and Malicious Prosecution Claims are Untimely.**

An additional consideration governs when Plaintiff's Fifth Amendment claims (counts 1-2), Fourth Amendment claims (counts 7-8) and malicious prosecution claims (counts 9-10) accrued. Each of these claims challenges the disciplinary proceedings that resulted in Plaintiff's loss of good-time credits and his transfer from Marvin Gardens to MDC-LA.

Under the favorable termination doctrine set forth in Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), a state prisoner's claim for damages under 42 U.S.C. § 1983 is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has been invalidated. "A claim for damages bearing that relationship to a

conviction or sentence that has not been so invalidated is not cognizable. . ." Heck, 512 U.S. 477, 486-87. It therefore follows that such claims do not accrue — and the statute of limitations does not begin to run — unless and until the underlying conviction is invalidated. The Heck rule applies to prison disciplinary proceedings where good-time credits were forfeited. See Edwards v. Balisok, 520 U.S. 641 (1997) (applying Heck rule to plaintiff's § 1983 claim that prison disciplinary proceeding that resulted in loss of good-time credit was unconstitutionally flawed).

Because Plaintiff's Fifth Amendment, Fourth Amendment, and malicious prosecution claims imply the invalidity of the disciplinary proceedings that resulted in his loss of good-time credits, the Heck favorable-termination rule applies to them. Therefore, Plaintiff could not have brought these claims — and they did not accrue — until that discipline was invalidated.

Plaintiff argues that his discipline was invalidated on October 1, 2012, when the district court entered a judgment granting his habeas petition challenging the July 2010 disciplinary proceedings as having violated his due process rights. See Yagman v. Meinberg, Case no. CV-10-5860-SVW (CW) (C.D. Cal. filed August 6, 2010), docket nos. 97, 98 (order accepting magistrate judge's recommendation to grant habeas relief and corresponding judgment). By this view, Plaintiff's claims would be timely because they were filed on September 29, 2014, which is within two years of their October 1, 2012 accrual.

However, as Plaintiff acknowledges, the BOP itself vacated and expunged his discipline by November 3, 2010 and Plaintiff was released on November 8, 2010 — long before the October 2012 order. See FAC ¶¶ 7, 149-153. Although it might reasonably appear that the BOP vacated

Plaintiff's discipline in response to the magistrate judge's October 22, 2010 recommendation that Plaintiff's habeas petition be granted, see FAC ¶ 150, that fact does not make the BOP's executive order of expungement any less effective for purposes of establishing when his claims accrued.

In fact, the Ninth Circuit recently ruled that Plaintiff's habeas case "became moot when the Bureau of Prisons vacated the disciplinary proceedings, because there was no further relief that could have been given." Yagman v. Thomas, No. 12-57063, 2015 WL 1923879, at *1 (9th Cir. Apr. 29, 2015). The circuit court noted that "the expunged discipline record could not have affected [Plaintiff's] custody, . . . nor could [it] have had other adverse consequences." Id. Accordingly, the Ninth Circuit vacated the very judgment that Plaintiff now relies upon as triggering the accrual of his Fifth Amendment, Fourth Amendment, and malicious prosecution claims. Because Plaintiff "faced no possible collateral consequences," id., from the discipline once the BOP expunged it, it follows that the BOP's order expunging his discipline satisfied Heck.

Therefore, under Heck, Plaintiff's Fifth Amendment, Fourth Amendment, and malicious prosecution claims accrued when the BOP expunged his discipline. That occurred in November 2010, and Plaintiff filed his Fourth Amendment and malicious prosecution claims on September 29, 2014, more than two years later. Accordingly, these claims are barred by the two-year statute of limitations.

For the foregoing reasons, Plaintiff's constitutional and malicious prosecution claims (counts 1-10) are barred by the statute of limitations and should be dismissed.

**B.  Plaintiff Fails to State a RICO Claim.**

Plaintiff asserts a RICO claim (count 11) against all Defendants. See FAC ¶¶ 342-366. RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962, in turn, makes it unlawful for a person (a) to invest income derived from a pattern of racketeering activity; (b) to acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) to conduct the affairs of an enterprise through a pattern of racketeering activity; or (d) to conspire to violate subsections (a), (b), or (c) of the RICO Act. See 18 U.S.C. § 1962. Plaintiff invokes all four kinds of RICO violation. See FAC ¶¶ 345, 366.

Plaintiff's RICO claim consists entirely of conclusory allegations that merely recite the various means of satisfying some of the elements of a RICO claim. See FAC ¶¶ 342-366. Thus, the claim does not fairly apprise any particular defendant of the misconduct of which he or she is accused, and does not constitute a short and plain statement of the claim. Plaintiff's RICO claim therefore violates Fed R. Civ. P. 8(a)(2) and should be dismissed on that basis.

Plaintiff also fails to allege a plausible factual basis for his RICO claim for the reasons stated below, so it should be dismissed under Fed. R. Civ Proc. 12(b)(6).

**1.  Plaintiff Has Not Pled a Pattern of Racketeering Activity.**

To state any civil RICO claim, a plaintiff must show a "pattern" of "racketeering activity." See 18 U.S.C. § 1962. Section 1961(a) defines "racketeering activity" and consists of a lengthy list of predicate criminal acts, all of which are indictable under various specified federal statutes or under state law. Plaintiff's RICO claim

accuses all Defendants of violating "RICO predicate statutes, including extortion, mail fraud, wire fraud, fraudulent concealment, obstruction of justice. . . and money laundering," FAC ¶ 347, but it is devoid of any factual allegations. Plaintiff's briefing also fails to link any factual allegations anywhere in his FAC with any of the predicate acts his RICO claim relies upon.

A review of the entire FAC yields only the following allegations that could arguably approach constituting a RICO predicate act:

- Kincey, who was the CDC disciplinary officer who conducted the July 8, 2010 disciplinary hearing, "concealed evidence, refused to permit the introduction of exculpatory evidence, refused to consider evidence, refused to permit the calling of any witnesses or to consider Plaintiff's witnesses, intentionally denied Plaintiff the right to present Plaintiff's defense." [FAC ¶ 165.]
- Turner's testimony on the issue of when Plaintiff was served with the incident report "was false," because her statement that she served it on July 2, 2010, at 11:24 a.m. when Plaintiff was returned to close custody, is inconsistent with BOP records indicating that Plaintiff was not returned to close custody until 3:19 p.m. that same day. [FAC ¶¶75-77.]
- McWilliams, who, on July 28, 2010, reviewed the findings of the CDC hearing and imposed the discipline on Plaintiff, concluded "knowingly falsely" that the Plaintiff had been afforded due process, that the CDC's factual conclusions were supported by evidence, and that Plaintiff never submitted any prescription to staff for approval. [FAC ¶ 61.]

None of these allegations corresponds to extortion, mail fraud, wire fraud, or money laundering, either facially or by implication.

Thus, Plaintiff has not pled facts to support those predicate acts.

Insofar as these factual allegation can arguably suggest the predicate acts of fraudulent concealment or obstruction of justice, they nevertheless cannot support a RICO claim because they do not comprise a "pattern" of racketeering activity. In H.J. Inc. v. Northwestern Bell, 492 U.S. 229, 109 S.Ct. 2893 (1989), the Supreme Court established that whether racketeering acts constitute a "pattern" turns on the relatedness and continuity of the acts. See H.J. Inc., 492 U.S. at 237. The alleged predicate acts must have both relatedness and continuity to constitute a pattern of racketeering activity. Id. 492 U.S. at 240 (1989) ("the relatedness of racketeering activities is not alone enough to satisfy § 1962's pattern element. To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.") (original emphasis).

Here, the Court need only consider continuity. Continuity may be close-ended, "referring. . . to a closed period of repeated conduct," or open-ended, which is "past conduct that by its nature projects into the future with a threat of repetition." Id. at 241.

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Id. at 242. Although no rigid rule establishes the minimum period that can qualify as "a substantial period of time," predicate acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at 242. Thus, conduct that lasts

for less than a year is unlikely to be sufficiently continuous to establish a pattern. See Religious Technology Ctr. v. Wollersheim, 971 F.2d 364, 366-367 (9th Cir. 1992) ("[w]e have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year"); see also Crest Construction II, Inc. v. Doe, 660 F.3d 346, 357 (8th Cir. 2011) (scheme lasting less than seven months lacked continuity); Spool v. World Child Intern. Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008) ("we have 'never held a period of less than two years to constitute a substantial period of time'"); Giuliano v. Fulton, 399 F.3d 381, 390 (1st Cir. 2005) ("[o]ur case law suggests that the commission of 16 predicate acts over a six-month period is inadequate to establish a closed-ended pattern of racketeering"). In addition, the relevant period "is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." Spool, 520 F.3d at 184.

Plaintiff alleges, at most, three potential predicate acts that occurred in July 2010. This is certainly insufficient to establish a closed-period pattern. Even if all of the conduct that arguably contributed to Plaintiff's claimed civil rights violations could somehow be deemed RICO predicate acts, they extend only from late June 2010 to mid-November 2010, a period of perhaps five months. This too, as a matter of law, falls short of the "substantial period of time" necessary to establish a closed-period pattern of racketeering activity.

Nor could the foregoing amount to open-ended continuity. Conduct may reflect open-ended continuity when "the related predicates themselves involve a distinct threat of long-term racketeering

14

activity, either implicit or explicit," such as a scheme whereby a person continually extorts protection money from neighborhood businesses. H.J. Inc., 492 U.S. at 242. Or, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business," whether the entity is an organized crime entity or a legitimate business. Id. at 242-243.

Defendants' conduct as alleged in the FAC lacks open-ended continuity. By Plaintiff's own account, Defendants' conduct concluded when the BOP expunged his discipline. None of the FAC's allegations plead or plausibly imply that any of the Defendants have continued to threaten Plaintiff or anyone else with RICO predicate acts. Because there is no plausible threat of continued racketeering conduct, the acts alleged do not constitute an open-ended pattern.

Because the Defendants' alleged conduct bears neither closed- nor open-ended continuity, it cannot constitute a "pattern" of activity. Therefore, Plaintiff's RICO claim is subject to dismissal for failure to state a claim.

**2.    Plaintiff Cannot Maintain Claims Under 18 U.S.C. §§ 1962(a) or (b).**

Plaintiff's claims under 18 U.S.C. §§ 1962(a) and (b) fail for additional reasons. Notably, the FAC does not tie Plaintiff's alleged injury to the particular conduct these narrow sections forbid.

The only allegation in Plaintiff's RICO claim that arguably pertains to section (a) is that "Defendants received income. . . from the pattern of racketeering activity alleged herein and used that income in the acquisition of an interest in and/or operation of the enterprises in violation of 18 U.S.C. [§] 1962(a). . . ." [FAC § 345.]

The only allegations pertaining to section 1962(b) are that the "Defendants. . . . acquired and/or maintained control over said racketeering enterprises through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. [§] 1962(b)," and that "[t]hese wrongful acts continue to enable defendants to acquire and maintain, both directly and indirectly, interests and control of the racketeering enterprise in which they all engage." [FAC ¶¶ 345, 354.]

First, these allegations are general, conclusory, and vague in that they fail to identify any of the fifty-five defendants or assert any facts against them. Furthermore, Plaintiff fails to allege any facts showing that any defendant invested racketeering-derived income, or used such income to acquire an interest in the enterprises. Absent such allegations, Plaintiff's claims under §§ 1962(a) and (b) fail.

Second, to state a RICO claim, a plaintiff must show injury "by reason of" a RICO violation. 18 U.S.C. § 1964(c). Thus, a plaintiff "seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income," rather than by the predicate racketeering activity. Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429, 437 (9th Cir. 1992) (so holding, adopting approach of Second, Third, and Fourth Circuits). An allegation that a defendant reinvested racketeering-derived income into the racketeering enterprise that harmed the plaintiff is not the same as alleging injury by the investment of racketeering income, and does not give rise to a claim under § 1962(a). See, e.g, Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993) (affirming dismissal because allegation that defendants reinvested racketeering income into their enterprise did not explain how the plaintiff was injured by the

use or investment of racketeering income as opposed to by the racketeering acts themselves).

Similarly, a plaintiff asserting a claim under § 1962(b) must show that he was injured by the defendant's maintenance or acquisition of an interest in an enterprise through racketeering activity. See Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 329 (6th Cir. 1999) (upholding dismissal where plaintiff failed to allege injury from the defendant's acquisition of an interest in an enterprise). An injury flowing from a defendant's predicate acts is not enough to satisfy sections 1962(a) or (b). Lightning Lube, Inc., 4 F.3d at 1188-1190.

Here, Plaintiff has not pled the requisite nexus between his injuries and the conduct specified in §§ 1962(a) and (b). The only injuries Plaintiff has alleged — the violation of his civil rights, the loss of good time credits, and related damages — arose directly from the disciplinary proceedings that he claims were conducted through racketeering activity. The FAC contains no allegations that he was injured by the Defendants' investment of racketeering income or by the Defendants' maintenance or acquisition of an interest in an enterprise, and no such inference can plausibly be drawn from any of the allegations. Therefore, Plaintiff cannot maintain a his claims under 18 U.S.C. §§ 1962(a) or 1962(b).

It does not appear that Plaintiff can amend his constitutional and malicious prosecution claims to overcome the statute of limitations. Nor does it appear that Plaintiff can amend his RICO claim to demonstrate a "pattern" of activity, or that he was injured "by way of" RICO predicate acts. Therefore, amendment would be

17

futile, and dismissal should be with prejudice.

### V. RECOMMENDATIONS

The magistrate judge recommends that the court issue an order: (1) accepting this Report and Recommendation; (2) granting the Defendants' Motions to Dismiss (docket nos. 114, 118, 119, 153); (3) dismissing Plaintiff's First Amended Complaint without leave to amend; and (4) dismissing this action, with prejudice.

DATED: July 6, 2015



_____
CARLA M. WOEHRLE
United States Magistrate Judge